E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
JASON A. GORN (Cal. Bar No. 296179)
Assistant United States Attorney
International Narcotics, Money Laundering,
  And Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7962
     Facsimile: (213) 894-3713
     E-mail:    Jason.Gorn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 5:24-cr-00015-KK |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO THE COURT'S REQUEST FOR DISCOVERY |
| v. | |
| CORTEZ ALEXANDER COOKE (1), | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jason Gorn, hereby files this response to the Court's request for discovery. (Dkt. 100.)

//
//
//
//
//
//

This response is based on the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 13, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division


        /s/
JASON GORN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                            PAGE

TABLE OF AUTHORITIES...............................................ii

**I.   INTRODUCTION**...................................................4

**II.  STATEMENT OF FACTS**.............................................5

**III. RESPONSE TO THE COURT'S REQUEST**................................8

   **A.   No Defendant Has Raised Concerns About Selective
          Prosecution or Requested Discovery About This Issue**.......8

   **B.   The Rigorous Standard for Discovery Has Not Been
          Satisfied**.................................................9

**IV.  CONCLUSION**....................................................13

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

CASES:

Berger v. United States,
  295 U.S. 78 (1935) ............................................... 4

Greenlaw v. United States,
  554 U.S. 237 (2008) .............................................. 8

United States v. Aguilar,
  883 F.2d 662 (9th Cir. 1989) .................................... 10

United States v. Armstrong,
  517 U.S. 456 (1996) ......................................... passim

United States v. Bourgeois,
  964 F.2d 935 (9th Cir. 1992) ................................ passim

United States v. Fernandez,
  231 F.3d 1240 (9th Cir. 2000) ................................... 11

United States v. Miller,
  722 F.2d 562 (9th Cir. 1983) .................................... 12

United States v. Rundo,
  108 F.4th 792 (9th Cir. 2024) ............................... 10, 11

United States v. Sellers,
  906 F.3d 848 (9th Cir. 2018) .................................... 10

United States v. Sineneng-Smith,
  590 U.S. 371 (2020) ..................................... 3, 4, 7, 8

United States v. Smith,
  231 F.3d 800 (11th Cir. 2000) ................................... 10

United States v. Steele,
  461 F.2d 1148 (9th Cir. 1972) .................................... 9

United States v. Turner,
  104 F.3d 1180 (9th Cir. 1997) ................................... 10

Wayte v. United States,
  470 U.S. 598 (1985) ......................................... 10, 12

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

STATUTES:

18 U.S.C. § 1951(a)............................................... 8

RULES:

Fed. R. Crim. P. 12(b)(3)......................................... 9
Fed. R. Crim. P. 16(a)(2)........................................ 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The Court has requested that the government produce information regarding Hobbs Act robbery prosecutions in the Central District of California because it has concerns that certain types of defendants are being selected for prosecution. (Dkt. 100 at 1.) The government takes seriously its obligation to make charging decisions without consideration of race, gender, or any other protected characteristic. Indeed, the government embraces its longstanding role as "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all[.]" Berger v. United States, 295 U.S. 78, 88 (1935).

The government, however, respectfully declines to produce the information requested by the Court. For two reasons, the Court's sua sponte request for discovery is not procedurally or substantively appropriate:

First, the Court's sua sponte discovery request violates "the principle of party presentation." United States v. Sineneng-Smith, 590 U.S. 371, 375 (2020). None of the defendants in this case have raised concerns about selective prosecutions or requested discovery to support such a claim. To the contrary, two of the defendants have already pled guilty to Hobbs Act robbery, while the third defendant has expressed interest in pleading guilty via the CASA program. And "as a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling

4

them to relief." Id. at 375-76 (cleaned up). There is no reason to depart from that bedrock principle here.

Second, the Court's sua sponte discovery request does not meet the rigorous standard that applies in this context. A defendant seeking discovery to support a selective prosecutive claim "must present specific facts, not mere allegations, which establish a colorable basis for the existence of both discriminatory application of a law and discriminatory intent on the part of government actors." United States v. Bourgeois, 964 F.2d 935, 940 (9th Cir. 1992). In particular, the defendant must "produce some evidence that similarly situated defendants of other races [or gender or ages] could have been prosecuted, but were not." United States v. Armstrong, 517 U.S. 456, 469 (1996). The Court has not identified any such comparators, and its "personal conclusions" and experience are insufficient to order discovery regarding the government's charging decisions. Id. at 470. Accordingly, the government respectfully declines to produce the requested information.

## II.   STATEMENT OF FACTS

This case stems from an ATF investigation into a string of smash-and-grab robberies of jewelry stores throughout the Los Angeles area. These robberies were committed using similar methods. Often a maskless crew member would first approach the store, pretending to be a customer, and hold open the door as the masked robbers entered the store. The robbery crew, wearing hoodies and masks, would run into the store carrying trash bins and hammers. The crew would then smash the display cases, take jewelry, and flee.

On December 10, 2023, defendants committed one of these smash-and-grab robberies together. That day, ATF agents were conducting

surveillance of two cars -- a White Mercedes C300 and a White Infiniti Q50 -- that were linked to multiple prior robberies.  ATF agents tracked the cars to a shopping center in Temecula, California.  The cars traveled in tandem together for around 20 miles, entered the shopping center parking lot, and then circled the victim jewelry business -- Diamonds by Monet.

Defendant Kristian Caldwell's minor brother eventually got out of the White Mercedes and entered Diamonds by Monet holding a cell phone in his hand.  Multiple males, who were wearing hoodies and face masks, then exited the White Infiniti while carrying trash cans and hammers.  One masked man held the front door to the jewelry store open as three others -- defendant Cortez Cooke (seen below in a red and grey hoodie, grey sweatpants, and skeleton facemask), a juvenile Hispanic male, and an unidentified African American man -- began smashing the display cases with hammers.



The robbers took approximately $130,000 in jewelry before an armed employee fired upon and missed the robbers. The robbers then returned to the White Infiniti. Defendant Cooke drove the White Infiniti at speeds of more than 100 miles per hour as he fled law enforcement, eventually ending the chase in Compton, California. Cooke then got out of the car and fled on foot until law enforcement detained him along with the same Hispanic juvenile who accompanied defendant Cooke during the robbery. Another suspect is believed to have escaped during the foot pursuit. During a search of the White Infiniti, ATF agents found a trash can containing jewelry, display holders, broken glass, and a pair of gloves.[1]

Law enforcement also apprehended the occupants of the White Mercedes, while it was still in the Temecula shopping center parking lot. Officers arrested defendant Caldwell (the driver), defendant Kahn (the front passenger), and Caldwell's juvenile brother (in the rear seat). During the arrest, an ATF agent saw that both defendants Caldwell and Kahn had active open calls on their cellphones that law enforcement believed were used to coordinate the robbery. And the ATF later obtained cell site tower data for the locations of defendants Caldwell's and Kahn's cell phones and linked them to the locations and times of nine other attempted or completed robberies.

In December 2023, the government charged defendants Cooke, Caldwell, and Kahn, by complaint with one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). (Dkt. 1.) On January 11, 2024,

---

[1] Law enforcement has linked defendant Cooke to two other attempted robberies in the cities of Eastvale and Orange based on the surveillance video and the matching skeleton-type facemask that defendant Cooke wore during the instant offense. Defendant Cooke was also placed on juvenile probation in Los Angeles County for an August 2023 robbery in Lakewood.

7

the grand jury returned an indictment for the same charge. (Dkt. 43.) On November 12, 2024, defendants Caldwell and Kahn pled guilty to the single-count indictment pursuant to plea agreements. (Dkts. 96-97.) Defendant Cooke's CASA application remains pending. (Dkt. 100.)

**III. RESPONSE TO THE COURT'S REQUEST**

The government has carefully reviewed the Court's request for discovery related to Hobbs Act robbery prosecutions in the Central District of California. For the reasons explained below, however, the government believes that this sua sponte discovery request is not procedurally or substantively appropriate.

    **A.   No Defendant Has Raised Concerns About Selective Prosecution or Requested Discovery About This Issue**

As a procedural matter, the Court's sua sponte request for discovery conflicts with the principle of party presentation. The Supreme Court has instructed that "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." United States v. Sineneng-Smith, 590 U.S. 371, 375 (2020) (quoting Greenlaw v. United States, 554 U.S. 237, 243 (2008)). Courts "do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." Id. (cleaned up). In short, "courts are essentially passive instruments of government." Id. (alteration adopted and quotation marks omitted).

The Court's discovery request violates that bedrock principle. None of the three defendants in this case has raised any concerns about selective prosecution or requested discovery about this issue.

To the contrary, two of the defendants -- Caldwell and Kahn -- have already pled guilty to a count of Hobbs Act robbery.  Through these guilty pleas, they have waived the right to bring a motion to dismiss based upon selective prosecution.  See Fed. R. Crim. P. 12(b)(3) (providing that any objection based upon "selective or vindictive prosecution" must be raised "by pretrial motion").  And the third defendant -- Cooke -- has expressed interest in pleading guilty via the CASA program.  (See Dkt. 100 at 2.)

Given these circumstances, the Court should not sua sponte initiate an investigation into the government's charging practices. All three defendants are represented by competent counsel who have raised certain issues with the government -- but not selective prosecution.  And "as a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." Sineneng-Smith, 590 U.S. at 375 (quotation marks omitted).  Therefore, the Court should not order discovery regarding a claim that defendants have declined to pursue.

**B.   The Rigorous Standard for Discovery Has Not Been Satisfied**

As a substantive matter, the Court's sua sponte request for discovery does not satisfy the rigorous standard that applies in this context.  Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." United States v. Armstrong, 517 U.S. 456, 464 (1996) (cleaned up).  That presumption of regularity "stems from a concern not to unnecessarily impair the

performance of a core executive constitutional function." Id. at 465. "Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." Wayte v. United States, 470 U.S. 598, 607 (1985).

To overcome these separation-of-powers concerns and obtain dismissal of criminal charges based on selective prosecution, a defendant must present "clear evidence" that the government's decision to prosecute was "based on an unjustifiable standard such as race, religion, or other arbitrary classification." Armstrong, 517 U.S. at 464-65 (citations omitted). "Mere selectivity in prosecution creates no constitutional problem." United States v. Steele, 461 F.2d 1148, 1151 (9th Cir. 1972). Armstrong's "demanding" and "rigorous" standard, 517 U.S. at 463, 468, requires proof "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." Id. at 465.

Furthermore, to ensure that selective-prosecution claims do not "divert prosecutors' resources" and reveal "prosecutorial strategy," the Supreme Court has imposed a "correspondingly rigorous standard for discovery in aid of such a claim." Armstrong, 517 U.S. at 468. A defendant seeking discovery "must present specific facts, not mere allegations, which establish a colorable basis for the existence of both discriminatory application of a law and discriminatory intent on the part of government actors." United States v. Bourgeois, 964 F.2d 935, 940 (9th Cir. 1992). And that evidence must be "solid" and

10

1  "credible" -- "hearsay" or "personal conclusions based on anecdotal
2  evidence" will not do.  Armstrong, 517 U.S. at 468, 470; Bourgeois,
3  964 F.2d at 940.  "This is a high threshold" that only "the rare
4  defendant" can meet.  Bourgeois, 964 F.2d at 939.  Indeed, "the
5  standard for discovery" under Armstrong is "nearly as rigorous as
6  that for proving the claim itself," because "the standard was
7  intentionally hewn closely to the claim's merits requirements."
8  United States v. Sellers, 906 F.3d 848, 852 (9th Cir. 2018).
9       The Court's sua sponte discovery request does not satisfy "[t]he
10 threshold requirement to obtain discovery" in support of a selective
11 prosecution claim.  United States v. Turner, 104 F.3d 1180, 1184 (9th
12 Cir. 1997).  To obtain such discovery, the law "require[s] the
13 defendant to produce some evidence that similarly situated defendants
14 of other races [or gender or ages] could have been prosecuted, but
15 were not."  Armstrong, 517 U.S. at 469.  The similarly situated
16 comparison or "control group" must be the same as the defendant "in
17 all relevant respects."  United States v. Aguilar, 883 F.2d 662, 706
18 (9th Cir. 1989); see also United States v. Rundo, 108 F.4th 792, 801
19 (9th Cir. 2024).  Lawbreakers are not "similarly situated" unless
20 they "committed the same basic crime in substantially the same
21 manner," such that their prosecutions "would have the same deterrence
22 value and would be related in the same way to the Government's
23 enforcement priorities and enforcement plan."  United States v.
24 Smith, 231 F.3d 800, 810 (11th Cir. 2000).
25      The Court's sua sponte discovery request does not identify any
26 individuals -- of different races, genders, or ages -- who committed
27 similar robberies in substantially the same manner, but were not
28 prosecuted.  Rather, the Court merely states that, in its experience,

11

"Hobbs Act Robbery prosecutions . . . appear to almost exclusively involve defendants of a specific age, race, and gender demographic." (Dkt. 100 at 1.)  But the Supreme Court and the Ninth Circuit have both warned that such "personal conclusions based on anecdotal evidence" cannot be substituted for actual comparators. Armstrong, 517 U.S. at 470; accord Rundo, 108 F.4th at 800.  To obtain discovery regarding the government's charging practices, the defendant must point to "solid, credible evidence" of discrimination, Bourgeois, 964 F.2d at 940, which the Court has not done.

Apart from this issue, the Court also requests certain documents that are privileged work product.  The Ninth Circuit has recognized that the work product privilege shields from discovery "internal government documents prepared by the U.S. Attorney in anticipation of litigation." United States v. Fernandez, 231 F.3d 1240, 1247 (9th Cir. 2000); see also Fed. R. Crim. P. 16(a)(2) (codifying similar privilege).  The first category of information requested by the Court -- "[t]he Government's policies and procedures with respect to prosecuting Hobbs Act Robbery cases" (Dkt. 100 at 1) -- is covered by this privilege.  These policies and procedures are the internal work product of the government, and they were prepared in anticipation of cases such as this one.  And as with all of the information requested by the Court, compelling their disclosure "threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." Wayte, 470 U.S. at 607-08 (quotation marks omitted).  As a result, the Court's request for discovery is inappropriate for multiple reasons.

***

Ultimately, "separation of powers requires that the judiciary remain independent of executive affairs," and "[c]harging decisions are generally within the prosecutor's exclusive domain." United States v. Miller, 722 F.2d 562, 565 (9th Cir. 1983). While the government recognizes the Court's concerns about equal treatment, the Court may not invade this exclusive domain -- and order discovery regarding the government's charging practices -- unless a "high threshold" is satisfied. Bourgeois, 964 F.2d at 939. The Court's sua sponte discovery request does not meet that high threshold.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully declines to produce the discovery requested by the Court.